UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE ROSITA OBLIA<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 1:18-cv-01280-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

### I. Introduction

Plaintiff Yvonne Rosita Oblia ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 20, 24 and 25. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

### II. Procedural Background

On December 31, 2013, Plaintiff filed an application for supplemental security income alleging disability beginning October 1, 2012. AR 15. The Commissioner denied the application

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 and 10.

1

initially on September 16, 2014, and upon reconsideration on January 9, 2015. AR 15. On March 10, 2015, Plaintiff filed a request for a hearing before an Administrative Law Judge. AR 15.

Administrative Law Judge Phillip C. Lyman presided over an administrative hearing on September 11, 2017. AR 35-88. Plaintiff appeared and was represented by an attorney. AR 35. Medical expert Jeff Hansen, M.D., an orthopedist, and vocational expert Thomas G. Linvill testified. AR 15. On September 27, 2017, the ALJ denied Plaintiff's application. AR 67-81.

The Appeals Council denied review on July 24, 2018. AR 1-6. On September 18, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

Plaintiff (born December 20, 1973) complained of intractable pain. AR 62. Although Plaintiff's social security record showed gaps in employment, she testified that she had worked as a live-in caregiver for seventeen years. AR 77. Plaintiff alleged that she had injured her back moving a wheelchair-dependent client up and down stairs. AR 80. The administrative record includes extensive evidence of Plaintiff's multiple impairments in recent years.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

///

///

## VI. Summary of the ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2013. AR 17. Her severe impairments included migraine headache, back pain with mild degenerative changes of the lumbar spine, high blood pressure (well controlled with medication) and neck pain with hand spasms. AR 27. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 426.926). AR 20.

The ALJ concluded that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she could stand and walk no more than three to four hours cumulatively in an eight-hour workday. AR 20. Plaintiff could never crouch, kneel, crawl or climb ladders, ropes or scaffolding nor work at unprotected heights, near dangerous machinery or near fumes or dust. AR 20. Plaintiff could occasionally climb stairs or ramps, balance, stoop, or work in an environment with extreme heat and cold, wetness, noise or vibration. AR 20. Plaintiff would require as much as a fifteen-minute unscheduled break every two hours, and up to a total of one hour of unscheduled breaks in an eight-hour workday. AR 23.

Plaintiff was unable to perform any past relevant work. AR 23. The ALJ did not address transferability of job skills since under the Medical-Vocational Rules because Plaintiff was not disabled whether or not she had transferable skills. AR 23. Considering Plaintiff's age, education, work experience and residual functional capacity, jobs that Plaintiff could perform existed in significant numbers in the national economy. AR 23. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Act. AR 24.

## VII. Plaintiff's Ability to Do Work

Plaintiff contends that the ALJ's determination that she was not disabled constituted legal error because of the finding that Plaintiff required as much as a fifteen-minute break from work every two hours, up to a total of one hour of unscheduled breaks in an eight-hour workday. Plaintiff further contends that the ALJ erred in relying on the vocational expert's testimony that that unskilled jobs would be available for Plaintiff despite her need for the unscheduled breaks.

///

The Commissioner responds that the ALJ appropriately relied on the vocational expert's testimony.

### A. Testimony Regarding Plaintiff's Need for Unscheduled Breaks

In the course of examining the medical expert, orthopedist Jeffrey Hansen, M.D., Plaintiff's attorney asked Dr. Hansen whether he agreed with the April 10, 2017 opinion of Plaintiff's primary care physician, Silvia Diego, M.D., (*see* AR 616-17) that Plaintiff would require unscheduled thirty-minute breaks every thirty minutes to two hours. AR 65. Dr. Hansen replied:

> No, it's a little unpredictable, but I do think she's going to need unscheduled breaks. That's my overall impression from the functional level and the kind of pain she has. Whether it needs to be for 30 minutes at a time, I don't know. That's a pretty long break. I would say that she may need an unscheduled break as frequently as every two hours maybe for 15 or 30 minutes and, of course, she'd probably be off task at that point in time.

AR 65.

The ALJ then asked Dr. Hansen for a clinical basis for his opinion, such as physical exams, physical findings or laboratory results. AR 66. "That's a – I guess that's a good question," the doctor replied. AR 66. A brief colloquy ensued between the ALJ, Dr. Hansen and Plaintiff's attorney, Mr. Ishikawa:

> **ALJ:** Let me explain my concern, Mr. Ishikawa. Generally, treating doctors get to reach such conclusions. Medical experts have to stick to the record, and if it's in the record . . . it's in a summary check-the-box form but, where's the basis for it is my question . . . I read this file . . . but the question before the house for me is where is a clinical finding of any kind that says she needs, she needs unscheduled breaks? Help me find it if – if the doctor can't, Mr. Ishikawa, what would you point me to? As opposed to, as opposed to a conclusion reached by a treater, where is the clinical backup for it is my question.
>
> **Attorney:** Well, I would submit that throughout the record there is, there is [inaudible] pain and I believe the, the doctor testified as to, the existence of her pain, and I would ask the doctor if the, the unscheduled breaks would be due to the claimant's allegations of pain.
>
> **Medical Expert:** I believe the pain and the distraction from the pain would be the main factors, yes, and there is some confirmation of that in that consultative we talked about in 6F . . . . .

5

> I think it's Dr. Woods. And, of course, that's what the patient told him, that she could walk 15 minutes maximum with a cane. Basically, it's hard to specify or put a finger on it – the exact statement of description, judge, that, that says that, that these things are going to be true. To me, it's kind of an overall impression I get from the record that . . . . .
>
> That breaks would be necessary, but I can't pinpoint an actual statement or physical exam finding other than just the overall consistent nature of the pain complaints throughout the record.

AR 66-67.[2]

In response to further questioning by Plaintiff's attorney, Dr. Hansen added that in his opinion Plaintiff's pain and pain medication, including her self-prescribed use of marijuana on occasion, was likely to result in her being off task "more than most employers would like." AR 68-69. Dr. Hansen declined to quantify the amount of time Plaintiff would be off task, pondering that it could be ten or twenty per cent of the time. AR 69.

## B. Vocational Expert Testimony

Thomas Linvill testified as vocational expert. For the first hypothetical question the ALJ directed Mr. Linvill to assume a person of Plaintiff's age, education and vocational history who could lift and carry ten pounds occasionally and less than ten pounds frequently; stand and walk three to four hours in an eight-hour work day; and, sit six hours in an eight-hour work day. AR 80-81. The hypothetical person could occasionally balance, stoop and climb stairs and ramps, but never climb ladders, ropes or scaffolds, nor crouch, kneel or crawl. AR 81. She should only occasionally be exposed to extreme hot or cold temperature, and never be exposed to unprotected heights or large or dangerous moving machinery. AR 81. She had no manipulative or

///

---

[2] Administrative Exhibit 6F is the consultative evaluation by internist Ralph H. Wood, M.D. AR 383-85. In the report, Dr. Wood summarized:

> The claimant is using a cane held in her right hand. This is medically indicated for all ambulation. I don't think that she can stand and/or walk for more than three or four hours out of an eight hour shift and that might actually be stretching it. I find no limitations in sitting. I don't think she can regularly lift, push or pull more than 15 pounds and occasionally 25 pounds. I find no hand or fine finger limitations.

AR 385.

communication limitations. AR 81. The hypothetical person used marijuana but cessation of use would not modify any other aspects of her residual functional capacity. AR 81.

Before responding, the vocational expert asked Plaintiff a series of questions concerning her mental health treatment, which indicated that Plaintiff's mental health problems were not severe in that Plaintiff had received no mental health treatment other than the prescription of psychotropic drugs by her primary care physician. AR 81-83. The vocational expert then opined that Plaintiff's prior relevant work was medium, but that Plaintiff's residual functional capacity was generally at a sedentary level or less. AR 83. She had no transferable skills. AR 84. The vocational expert added:

> [E]mployers are not typically going to allow a person to take an unscheduled break of 15 minutes every two hours. I think that is going to be a deal breaker for many jobs. At the same time, hypothetically I found, found that in productivity there is some flexibility there, and so, considering the 15 per cent – it's less than 15 percent of the day, and in that case I would offer sedentary unskilled employment.

AR 84.

The vocational expert opined that the hypothetical claimant could perform the jobs of addresser (No. 209.587-010; sedentary; SVP 2; 6000 jobs nationally) and document preparer (No. 249.587-018; sedentary; SVP 2; 49,000 jobs nationally).

For the second hypothetical question, the ALJ directed the vocational expert to assume the same facts as in the first hypothetical question except that the hypothetical claimant would not require unscheduled breaks. AR 84. The vocational expert testified that his answer would be the same except for his caveat concerning unscheduled breaks. AR 85.

In response to further questions from Plaintiff's attorney, the vocational expert stated:

> I don't think there's a norm for unscheduled breaks, but what I've researched and looked at is productivity, and what I find is that for a person to be competitively employed, they need to be able to produce about 85 percent of what they're expected to produce in an average day. When they fall below that, they're outside of competitive employment. And so I use that 15 percent number as the number to compare need for break, breaks with.

AR 85.

///

7

Because Plaintiff's unscheduled breaks represented about 13 percent of the work day, the vocational expert opined that she was capable of competitive employment. AR 85-86. If Plaintiff was unproductive for more of the day, she would not meet minimum productivity standards and would lose her job. AR 86.

### C. <u>Legal Standards</u>

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for five days a week, or an equivalent work schedule." S.S.R. 96-8p, 1996 WL 374184 at *1 (1996). However, "[t]he ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled." S.S.R. 96-8p, 1996 WL 374184 at *8, n. 2. The Commissioner's guidelines direct those determining a claimant's functional capacity to "[c]onsider an 8-hour workday and a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions." Program Operations Manual System (POMS), DI 24510.005(C)(1)(f).[3] However, applicable regulations suggest a different analysis at steps four and five, when the burden shifts to the Commissioner to establish that the claimant can perform her past relevant work, or other work available in significant numbers in the national economy.[4]

If a claimant is able to work at the substantial gainful activity level, she is not disabled. 20 C.F.R. § 416.971. "Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis

---

[3] POMS constitute no more than persuasive authority. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010).

[4] *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), on which Plaintiff relies, is distinguishable in that it addresses the plaintiff's procedural right to pursue a claim against her former employer under the Americans with Disabilities Act after the Commissioner had found her disabled and entitled to benefits.

or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 416.972(a). The Ninth Circuit has held that part time work may be sufficient to find substantial gainful activity. *Katz v. Sec'y of Health and Human Servs.*, 972 F.2d 290, 292 (9th Cir. 1992). "Time is only one factor considered in determining substantial gainful activity." *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. (1990). In *Keyes*, the ALJ found that the claimant was able to perform substantial gainful activity in a five and one-half hour work day. *Id. See also Burkhalter v. Schweiker*, 711 F.2d 841, 843 (8th Cir. 1983) (holding that a claimant able to work competently five hours daily as a house cleaner was engaged in substantial gainful activity); *Smith v. Shalala*, 1995 WL 429484 at *15 n. 2 (N.D. Indiana June 6, 1995) (No. 3:94-CV-620RP) (discussing the disagreement between circuits concerning whether part-time work can constitute substantial gainful employment).

The Commissioner may conclude that a claimant's work that is performed under special conditions indicates that the claimant lacks the ability to perform substantial gainful activity. 20 C.F.R. § 416.973(c). Work performed under special conditions includes work performed at irregular hours or with frequent rest breaks. 20 C.F.R. § 416.973(c)(2). "[T]he ALJ is required to determine whether or not special conditions are required in order for plaintiff to be gainfully employed and, if so, if this requirement affects her ability to get a job." *Kilburn v. Colvin*, 2013 WL 1189690 at *4 (W.D. Wash. Feb. 21, 2013) (No. 12-cv-05414 RJB). When a claimant can only perform work under special conditions, the ALJ must determine whether the work was analogous to sheltered or subsidized employment. 20 C.F.R. § 416.973(c). Proceeds from work that the claimant did not actually earn, such as earnings from institutional or subsidized employment, generally do not constitute substantial gainful activity. *Jessica J. v. Comm'r of Soc. Sec.*, 2019 WL 1560470 at *4 (E.D. Wash. Feb. 2, 2019) (No. 4:18-CV-05048-JTR). In this case, nothing suggests that Plaintiff is only capable of working in a sheltered workshop or subsidized employment situation.

"While the time [a claimant] spend[s] in work is important, [the Commissioner] will not decide whether or not you are doing substantial gainful activity only on that basis." 20 C.F.R. § 416.973(e). According to the Ninth Circuit, the ultimate question before an ALJ—and before

9

experts undertaking residual functional capacity assessment—is whether a claimant is impaired to the degree that he/she is incapable of performing work activities on a regular and sustained basis or, in other words, that he/she is precluded from substantial gainful activity. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 604 (9th Cir. 1999). Work performed with minor accommodations is not necessarily work performed under special conditions that would preclude it from being considered substantial gainful activity. *Lantrip v. Colvin*, 2016 WL 901586 at * 4 (D. Idaho March 9, 2016) (No. 2:15-cv-00004-CWD) (citing *Katz*, 972 F.2d at 294). In *Katz*, the Ninth Circuit held that the minor job modifications provided by the claimant's employer's providing a small office space away from noise and other distractions, did not constitute a "special workshop." *Lantrip* at *4. *See also Carlson v. Colvin*, 2014 WL 1155617 (E.D. Cal. Mar. 21, 2014) (No. 2:13-cv-0419-CKD) (holding that the claimant's 28 hour per week job checking identification at a club that was done under special conditions consisting of reduced work time and ability to periodically sit and elevate his legs was not tantamount to a sheltered workshop).

When a claimant cannot perform his/her past relevant work, the Commissioner has the burden of proving at step five of the analysis that based on the claimant's residual functional capacity he/she can engage in some type of substantial gainful activity that currently exists in significant numbers in the national economy. *See, e.g., Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ may rely on a vocational expert to determine the work, if any, that the claimant can perform in view of his/her residual functional capacity. *Lewis*, 236 F.3d at 1071. In this case, the ALJ relied on the vocational expert's testimony concerning what work Plaintiff could perform despite her impairments.

Although Plaintiff challenges the vocational expert's testimony as an erroneous interpretation of the productivity guidelines on which the vocational expert relied, the Court is not required to accept Plaintiff's assessment of the meaning and credibility of the testimony. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply

supports the ALJ's interpretation as well.  When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

### VIII. Conclusion and Order

Based on the foregoing, the Court finds that that substantial evidence in the record as a whole and proper legal standards supported the Commissioner's decision denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Yvonne Rosita Oblia.

IT IS SO ORDERED.

    Dated:   **January 6, 2020**                    **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE